UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22777-CIV-ALTONAGA/Goodman

**FREEDOM WATCH, INC.**,

 Plaintiff,
v.

**RESPONSE UNLIMITED, INC.**, *et al.*,

 Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Response Unlimited, Inc., Philip Zodhiates, and Joel Baugher's Motion to Dismiss [ECF No. 16], filed September 7, 2017. Plaintiff, Freedom Watch, Inc., filed an Opposition ("Response") [ECF No. 26] on September 28, 2017, to which Defendant filed a Reply [ECF No. 30] on October 12, 2017. Plaintiff filed a Surreply [ECF No. 33] on October 17, 2017 and an Addendum in Support [ECF No. 34] on October 18, 2017. The Court has carefully considered the parties' written submissions,[1] the record, and applicable law.

### I. BACKGROUND

Freedom Watch, a non-profit organization specializing in public interest litigation, brings suit against Response Unlimited and its principals, Zodhiates and Baugher, for fraud and other claims related to Defendants' direct mailing and other fundraising efforts conducted on Plaintiff's behalf. (*See generally* Amended Complaint [ECF No. 7]).

---

[1] These documents include the List Brokerage Agreement between Freedom Watch and Response Unlimited, filed with the Motion (*see* Mot., Ex. A 21–27); certain emails between the chairman and general counsel of Freedom Watch, Larry Klayman, and Zodhiates and Baugher, filed with the Response (*see* Resp., Ex. A 20–22); the Affidavits of Philip Zodhiates [ECF No. 30-1] and Joel Baugher [ECF No. 30-2], filed with the Reply; and the Affidavit of Larry Klayman [ECF No. 33-1], filed with Plaintiff's Surreply.

Freedom Watch is a 501(c)(3) non-profit corporation incorporated in Washington, D.C. and registered to do business in Florida. (*See id.* ¶ 3). Larry Klayman, its chairman and general counsel, is a Florida citizen. (*See id.*). Response Unlimited is a Virginia corporation headquartered in Waynesboro, Virginia. (*See id.* ¶ 4). Zodhiates and Baugher are Virginia residents. (*See id.* ¶¶ 5–6; Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4).

Plaintiff alleges it entered into "an agreement, fiduciary relationship[,] and course of dealing" with Defendants to conduct fundraising services, including direct mailing, on behalf of Plaintiff. (*Id.* ¶ 9 (alteration added)). Defendants promised Plaintiff "they were conducting fundraising and other related services on behalf of Plaintiff honestly, diligently[,] and competently and not misappropriating and misusing Plaintiff's resources, names[,] and image for their own financial gain." (*Id.* ¶ 13 (alterations added)). Nevertheless, Plaintiff discovered Defendants were, without authorization: (1) "renting out" and using for their own benefit Plaintiff's mailing lists and other intellectual property without compensating Freedom Watch; (2) misappropriating Plaintiff's name, image, and other property in direct mailings without providing remuneration to Freedom Watch; (3) "intentionally and negligently under-mailing Plaintiff's fundraising materials" while simultaneously using Plaintiff's name, image, and other property for their own benefit; (4) exchanging Freedom Watch's mailing lists with other organizations for their own benefit; (5) "misappropriating monies that were actually fundraised on Plaintiff's behalf"; and (6) presenting Freedom Watch with fraudulent invoices that were artificially inflated with non-existent costs or hidden additions. (*Id.* ¶ 16 (alterations added)). Plaintiff asserts Defendants committed these acts in order to pay legal fees for separate civil and criminal proceedings involving Zodhiates. (*See id.* ¶ 17).

According to Plaintiff, "[a] large part of . . . Plaintiff's fundraising [and] direct mailing efforts by and through . . . Defendants were targeted to and in . . . Florida and particularly in this district." (*Id.* ¶ 3 (alterations added)). In his Affidavit, Klayman states "Response Unlimited has sent millions of pieces of mail into the state of Florida" (Klayman Aff. ¶ 12), where "a large majority of Freedom Watch's donors reside" (*id.* ¶ 11). "On numerous occasions . . . [Klayman] wired money to Response Unlimited, Baugher, and Zodhiates for their fundraising services . . . while [he] was in Florida." (*Id.* ¶ 14 (alterations added)). Klayman also claims to have spoken by telephone with "each of the three Defendants" on behalf of Freedom Watch while in Florida. (*Id.* ¶ 15).

Freedom Watch brings its Amended Complaint against Defendants asserting federal jurisdiction pursuant to 28 U.S.C. section 1332.[2] (*See* Am. Compl. ¶ 1). Plaintiff brings claims for fraud; misappropriation of trade secrets; breach of fiduciary duty; promissory estoppel; negligence; and unjust enrichment (*see generally id.*), and a cause of action requesting injunctive relief barring Defendants from using Plaintiff's name, image, or other intellectual property in any future mailings and fundraising activities (*see id.* ¶ 36).[3] Aside from this injunctive relief, Freedom Watch seeks economic and non-economic compensatory damages, punitive damages, and an equitable accounting of Defendants' books at the expense of Defendants. (*See id.* 14).

---

[2] Freedom Watch asserts damages in excess of $75,000 (*see id.* 14), and there is complete diversity of parties, as Freedom Watch, a Washington, D.C. corporation (*see id.* ¶ 3) whose principal place of business is either in Washington, D.C. or Florida, *see Freedom Watch, Inc. v. U.S. Dep't of State*, No. 5:13-CV-419-OC-22PRL, 2014 WL 12647765, at *1–2 (M.D. Fla. July 7, 2014), is diverse from Response Unlimited, a Virginia corporation with its principal place of business in Virginia (*see* Am. Compl. ¶ 4), and Zodhiates and Baugher, who are Virginia residents (*see id.* ¶¶ 5–6).

[3] The Amended Complaint also contains a claim for breach of contract, which Freedom Watch has since withdrawn. (*See* Resp. 6).

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(2), contending the Court lacks personal jurisdiction over them. (*See* Mot. 6–9). In the alternative, Defendants request a transfer of venue under 28 U.S.C. section 1404(a) to a United States District Court in Virginia. (*See* Reply 2–5).[4] Defendants further request dismissal of this dispute because it arises out of or relates to a List Brokerage Agreement between Freedom Watch and Response Unlimited and accordingly falls within the purview of the Agreement's arbitration clause. (*See* Mot. 3, 14). Defendants move to dismiss on the basis the Amended Complaint is a shotgun pleading in violation of Federal Rules of Civil Procedure 8(a)(2) and 10(b). (*See* Mot. 4–6). Additionally, Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because all counts aside from the abandoned breach of contract claim are barred by the independent tort doctrine (*see* Mot. 9–10); all counts besides the claim for misappropriation of trade secrets are preempted by Florida's Uniform Trade Secrets Act (*see* Mot. 15–18); "injunctive relief" is not a valid cause of action but instead a remedy (*see id.* 12–13); and Plaintiff fails to sufficiently plead claims for fraud and breach of fiduciary duty (*see id.* 11–14). Finally, Defendants ask the Court to strike the Amended Complaint's demand for punitive damages and references to Zodhiates's separate legal proceedings. (*See* Mot. 14–15, 18).

As the Court finds a transfer of venue to the Western District of Virginia is warranted, it declines to address the remaining relief sought in Defendants' Motion. *See, e.g.*, *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1285 (M.D. Ala. 2005) ("Because a transfer of venue in this case would obviate the need to reach the merits of the . . . motion to dismiss, the

---

[4] The Motion did not initially request a transfer of venue. On September 14, 2017, the Court entered a paperless Order [ECF No. 17] *sua sponte* requiring Plaintiff show cause in its response why the Court should not transfer this case to another venue, and instructing Defendants to address transfer of venue in their reply. Defendants requested a transfer of venue pursuant to section 1404(a) in their Reply, and Plaintiff has argued against a transfer of venue in his Surreply.

court will first consider the defendants' transfer motions." (alteration added)); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741–42 (S.D.N.Y. 2013) (noting instances where it is "sensible" and "prudentially appropriate" to address venue applications before reaching a challenge to personal jurisdiction (citing cases)).

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Courts have broad discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-CIV, 2016 WL 1546427, at *1 (S.D. Fla. Apr. 15, 2016) (internal quotation marks omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (other citation omitted).

Courts should consider at least the following private and public interest factors in weighing whether transfer to an alternative forum is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *2 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)) (other citation omitted).

## III.   ANALYSIS

In its Response, Plaintiff contends venue is proper in the Southern District of Florida under 28 U.S.C. section 1391(b)(2), which allows venue to be laid in any "judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred." (Resp. 3 (internal quotation marks omitted) (quoting 28 U.S.C. § 1391(b)(2))). While Defendants challenge Plaintiff's assertion a substantial part of the events giving rise to its claims occurred in Florida (*see* Reply 3–5)*,* "[section] 1404(a) does not condition transfer on the initial forum's being 'wrong,'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (alteration added). Rather, "it permits transfer to any district where venue is *also* proper." *Id.* (emphasis added). The propriety of venue in the Southern District of Florida under section 1391 is immaterial to the Court's analysis of whether venue should be transferred under section 1404. As the Court finds a transfer is warranted, it declines to reach the issue of whether venue can be properly laid in this District.

In their Reply, Defendants request the Court transfer this action to a court in "Virginia." (*See* Reply 2–5). As "[section] 1404(a) only provides for transfer between districts or divisions of federal district court," *Doran v. City of Clearwater*, 814 F. Supp. 1077, 1078 (M.D. Fla. 1993) (alteration and emphasis added), the Court construes Defendants' preferred venue to be the United States District Court for the Western District of Virginia.[5]

"To prevail on a motion brought under [section] 1404(a), a movant must establish: (1) an adequate alternative forum is available; (2) the private interests of the parties weigh in favor of transfer; and (3) the public interest weighs in favor of transfer." *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1382 (S.D. Fla. 2014) (alteration added) (citing *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012)).

---

[5] Defendants do not specify to which United States District Court in Virginia they would like the case transferred, nor do they clarify where within Virginia Zodhiates and Baugher reside. The Court nonetheless takes judicial notice Response Unlimited's headquarters in Waynesboro (*see* Am. Compl. ¶ 4) is located in the Western District of Virginia.

"An alternative forum exists where jurisdiction is proper, venue is proper[,] and the parties are amenable to service of process in the transferee forum." *Trafalgar*, 878 F. Supp. 2d at 1285 (alteration added; internal quotation marks and citation omitted). All three requirements are met here. Subject matter jurisdiction exists under 28 U.S.C. section 1332 regardless of the venue in which the case proceeds. Venue can be laid in the Western District of Virginia pursuant to 28 U.S.C. section 1391(b)(1), which makes venue proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," as Response Unlimited is headquartered in that district and the individual Defendants both reside in Virginia. (*See* Am. Compl. ¶¶ 4–6; Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4). Finally, the United States District Court for the Western District of Virginia can exercise personal jurisdiction over all Defendants, as both individual Defendants are Virginia residents and Response Unlimited is a Virginia corporation headquartered in Virginia. (*See* Am. Compl. ¶¶ 4–6; Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4). Moreover, Defendants argue this action could have been brought in Virginia (*see* Reply 2), and Plaintiff does not address this point in its Surreply, thereby conceding it. *See Rothschild*, 2016 WL 1546427, at *2.

Because the Western District of Virginia is an adequate alternative forum, the Court proceeds to analyze the private and public interest factors to assess the propriety of a transfer. First, it appears the Western District of Virginia is the most convenient forum for Defendants. Response Unlimited is headquartered in the district, and Zodhiates and Baugher reside in Virginia. (*See* Am. Compl. ¶¶ 4–6; Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4).

For its part, Plaintiff has not shown Florida would be a more convenient forum for Freedom Watch. Freedom Watch alleges it is a 501(c)(3) corporation incorporated in Washington, D.C. (*See* Am. Compl. ¶ 3). Freedom Watch asserts numerous connections to

Florida, including the fact it is "registered to do business in Florida" (*id.*); its chairman and general counsel, Klayman, is a citizen of Florida (*see id.*); its "Citizen's Grand Jury" project is headquartered in Ocala, Florida (*see* Klayman Aff. ¶ 9); and "a large majority of Freedom Watch's donors reside" in Florida (*id.* ¶ 11). Notably, however, it does not allege its headquarters or principal place of business is in Florida.[6]

Moreover, while Klayman claims "[m]any of Freedom Watch's . . . major cases have been filed in the Southern District of Florida" (*id.* ¶ 8 (alteration added)), the Court takes judicial notice Freedom Watch has litigated numerous suits in the United States District Court for the District of Columbia in recent years. *See, e.g.*, *Freedom Watch, Inc. v. U.S. Dep't of State*, No. CV 14-1832, 2016 WL 6155928 (D.D.C. Oct. 21, 2016); *Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries*, 107 F. Supp. 3d 134 (D.D.C. 2015); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 220 F. Supp. 3d 40 (D.D.C. 2016). The Court is thus not persuaded a district court in Virginia would be less convenient for Freedom Watch than litigating in Florida. As Defendants have shown the Western District of Virginia is a more convenient forum for them,

---

[6] The Court notes Plaintiff's initial Complaint [ECF No. 1] also lacked an allegation regarding the location of Freedom Watch's headquarters. On July 26, 2017, the Court entered an Order [ECF No. 5] bringing to Plaintiff's attention the Complaint "does not allege . . . where [Plaintiff's] principal place of business is located" (July 26 Order 1 (alterations added)), and directing Plaintiff to "file an amended complaint clarifying its own citizenship" (*id.* 2). Despite the Court's plain instructions, Plaintiff again failed to allege the location of its principal place of business in its Amended Complaint.

The Court takes judicial notice Freedom Watch's official website, www.freedomwatchusa.org (*see* Klayman Aff. ¶ 9), lists the address for Freedom Watch as "2020 Pennsylvania Ave NW, Ste 345 Washington, DC 20006," and provides only the address for Freedom Watch's "D.C. Headquarters" on the website's "contact" link. The Court takes further notice Freedom Watch has previously been admonished for alleging its principal place of business was in Ocala, Florida in an action before the United States District Court for the Middle District of Florida, while simultaneously alleging its principal place of business was in Washington, D.C. in an action before the United States District Court for the District of Columbia. *See Freedom Watch, Inc. v. U.S. Dep't of State*, 2014 WL 12647765, at *2 ("The Court questions why it is so difficult for Plaintiff to allege its principal place of business and therefore maintains a skepticism about Plaintiff's multiple representations.").

while Plaintiff has not shown the Southern District of Florida is more convenient for itself, the convenience of the parties favors transfer.

The parties have not identified where relevant documents or sources of proof may be located. However, the Court presumes the respective records of Response Unlimited and Freedom Watch will be pertinent to this litigation. Zodhiates and Baugher state "Plaintiff's contract with . . . Response Unlimited was performed and administered in Virginia." (Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4 (alteration added)). It follows that documents associated with Response Unlimited's performance and administration of its contract with Freedom Watch are likely located in Virginia, as Virginia is where Response Unlimited is headquartered and where Zodhiates and Baugher performed "[a]ll of [their] activities relating to the Plaintiff or the apparent subject of its lawsuit." (Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4 (alterations added)).

As Plaintiff has not alleged the location of its headquarters, the Court cannot determine from the parties' court filings where any relevant records in Freedom Watch's possession might be kept. In any event, "in a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813-KMM, 2012 WL 243764 at *3 (S.D. Fla. Jan. 25, 2012). Accordingly, this factor, too, cuts in favor of transfer.

The Western District of Virginia appears to be a greater "locus of operative facts" than the Southern District of Florida. *Rothschild*, 2016 WL 1546427, at *2 (citation omitted). While Defendants admit "Response Unlimited has directed mailings to persons with addresses in Florida" (Zodhiates Aff. ¶ 3; Baugher Aff. ¶ 3), Zodhiates and Baugher maintain they did not personally "mail or otherwise engage Florida residents in connection with Plaintiff's fundraising or direct mailings" (*id.*); "Plaintiff's contract with . . . Response Unlimited was performed and

administered in Virginia" (Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4 (alteration added)); and "[a]ll of [their] activities or the apparent subject of its lawsuit were performed . . . within Virginia" (*id.* (alterations added)).

Klayman states each Defendant "engaged in fundraising for the Citizen's Grand Jury" (Klayman Aff. ¶ 9), which is located in Florida; Defendants performed "extensive fundraising, mailing, and other services directed at the state of Florida . . . where a large majority of Freedom Watch's donors reside" (*id.* ¶ 11 (alteration added)); Response Unlimited and the individual Defendants sent "millions of pieces of mail into the state of Florida on behalf of Freedom Watch" (*id.* ¶ 12); Klayman wired money to Defendants from Florida (*see id.* ¶ 14); and Klayman had phone calls with "each of the three Defendants" while he was in Florida (*id.* ¶ 15). But even taking Klayman's statements as true, they do not contradict Defendants' allegation Defendants' actions forming the basis of this suit were all conducted out of Virginia, despite some of the acts being directed toward Florida. (*See* Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4). Plaintiff does not limit the causes of action in its Amended Complaint to those arising solely out of Defendants' contacts with Florida. (*See, e.g.*, Am. Compl. ¶ 16 (describing Defendants' "illegal, tortious and fraudulent conduct" without reference to whether the conduct was directed to or occurred in Florida)). As best the Court can surmise, while most or all of the relevant acts of Defendants occurred or originated in Virginia, only some were directed toward Florida. Therefore, the "locus of operative facts" factor favors transfer to the Western District of Virginia.

The remaining factors are either neutral or unable to be assessed by the Court given the parties' submissions. None of the parties has named potential witnesses who might testify at trial. The only individuals the Court can identify as potential witnesses from the briefing are Klayman, Zodhiates, and Baugher. While the Southern District of Florida would be a more

convenient forum for Klayman, who is a Florida resident (*see* Klayman Aff. ¶ 4), the Western District of Virginia would be more convenient for Zodhiates and Baugher, who are Virginia residents (*see* Zodhiates Aff. ¶ 4; Baugher Aff. ¶ 4). Thus, the factor related to "the convenience of the witnesses," *Rothschild*, 2016 WL 1546427, at *2 (citation omitted), does not cut for or against transfer.

The parties have not provided the Court with any information regarding each forum's availability of process to compel the attendance of unwilling witnesses; the relative means of the parties; which forum is preferable for trial efficiency; or which state's substantive law governs Plaintiff's claims. Consequently, these factors do not influence the Court's decision as to whether or not to transfer the case.

Finally, while Plaintiff's choice of forum should be afforded deference, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to 'less consideration.'" *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) (quoting *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985)) (other citations omitted). Thus, the "weight accorded [Plaintiff's] choice of forum," *Rothschild*, 2016 WL 1546427, at *2 (alteration added; citation omitted), does not override the remaining factors weighing in favor of transfer.

In sum, considering the section 1404(a) public and private interest factors together, the Court concludes a transfer to the Western District of Virginia is warranted.

## IV.   CONCLUSION

For the foregoing reasons, it is

CASE NO. 17-22777-CIV-ALTONAGA/Goodman

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 16]** is **GRANTED in part**.

The Clerk is instructed to transfer this case to the United States District Court for the Western District of Virginia and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Miami, Florida, this 19th day of October, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record